LONG, *Plaintiff-Appellant*, v. LONG *et al.*, *Defendant-Appellants*.

### In Banc, November 16, 1897. *

1. **Foreclosure of Mortgage**: EQUITY OF REDEMPTION: CREDITOR'S REMEDIES. Where the mortgagee is in possession under the first deed of trust, he can pursue his legal remedy of foreclosure, or if he is also the owner of the notes secured by a second deed of trust, he has the right in equity to a decree for subrogation to the place of the creditor in the first deed of trust, and can yield to the mortgagor an equity of redemption as to both incumbrances, in order to obtain a decree for the unpaid part of the first debt, and a court will not deprive him of his right to elect which course he will pursue.

2. **Mortgagee in Possession.** A mortgagee in possession may bring a bill in equity to foreclose, and a court of equity should not compel him to waive either his legal right to foreclose under the first deed of trust, or his right, if he is also the owner of the notes secured by the second deed of trust, to yield to the mortgagor the right to redeem under both mortgages, in order to obtain a decree for the unpaid part of the first debt, nor should it compel him to waive any concurrent remedy to which he may be entitled.

3. **Foreclosure of Deed of Trust**: TRANSFER OF TITLE: EQUITY OF REDEMPTION. By a foreclosure of a deed of trust the legal title passes to the purchaser, although the sale thereunder may be so irregular as not to extinguish the mortgagor's equity of redemption.

4. **Deed of Trust**: EQUITY OF REDEMPTION: EXTINGUISHMENT. The Supreme Court will not hold that the mortgagor's equity of redemption was extinguished by foreclosure contrary to all the pleadings in the case, and the positions assumed by the parties at the trial.

5. ———: LIMITATIONS: AMENDMENT OF PETITION. Where an amendment to the petition merely brings a second deed of trust into view for the purpose of foreclosure, the statute of limitations does not bar a proceeding to foreclose under the first deed of trust which was begun within ten years after the maturity of the debt, although the amendment was not made for sixteen years after such maturity.

---

* NOTE—Decided July 17, and rehearing denied November 16, 1897.

6. **Holder of Notes:** PRIMA FACIE OWNER. The indorsement in blank of negotiable notes by the payee and the possession thereof by the holder, make a *prima facie* case that the holder is the owner.

7. **Practice:** ONE YEAR LIMITATION FOR RENEWING SUITS. The privilege conferred by section 6784, Revised Statutes 1889, of bringing another suit within one year after a former suit of the same general nature ended, is an extension of the time within which a suit may be brought when the time of limitation has otherwise expired.

8. **Judgment of Circuit Court:** ORAL TESTIMONY TO VARY. Oral testimony is not competent in a collateral suit to give a judgment of a circuit court a broader effect than its terms imply.

9. **Equitable Cognizance:** DEMAND FOR JURY. Where a case is clearly one of equitable cognizance, it is properly triable by the court and a demand for a jury should be denied.

10. **Usurious Interest:** LEX LOCI. An agreement as to interest is valid if sanctioned by the law of the place where the parties to the paper have agreed that the interest shall be paid, even though invalid by the law of the State where the notes were actually made.

11. **Interest:** CONFLICTING CLAUSES IN NOTES AND MORTGAGE AS TO INTEREST. The deed of trust provided that foreclosure might be had on a failure to pay a part of the notes at their maturity, and that the proceeds of the sale should be applied to a payment of the principal sums and interest "so far as they remain unpaid at the day of the sale." The sale was held not to extinguish the equity of redemption, and that the mortgagor might redeem on payment of the notes and interest, which called for ten per cent interest both before and after maturity. *Held,* that the mortgagor is required to pay ten per cent interest up to the time of redemption and not six per cent only.

*Appeal from Knox Circuit Court.*—HON. BENJAMIN E. TURNER, Judge.

REVERSED *(with directions)*.

### STATEMENT.

The following are copies of one of the notes and one of the coupons mentioned in the opinion as secured by the deed of trust wherein the Messrs. Bull were trustees. The other notes and coupons so secured are

VOL. 141 mo—23

in the same general form, the only changes being in dates, amounts and times for payment:

"NOTE.

"Quincy, Ills., Dec. 18th, 1875.

"Four years after date I promise to pay to the order of L. and C. H. Bull, fifteen hundred dollars, for value received, with interest thereon at the rate of ten per cent per annum from this date until due, at the rate of ten per cent per annum after due until the said principal sum is fully paid—both principal and interest being payable at the banking house of L. and C. H. Bull in Quincy, Ills., with the current rate of exchange on New York. The first payment of interest is to be made on the 1st day of April, 1876, for the period ending on that day, and thereafter the interest is to be paid semiannually on the 1st days of April and October in each year, until the last payment of interest, which is to be made for the remaining period on the day of the maturity of this note. Interest coupons for the payment of said interest are also hereunto annexed. The holder of this note may extend the time for the payment of the whole or any part thereof on the maker executing coupons for interest to accrue thereon during such extension at a rate not exceeding ten per cent per annum, payable the dates herein named for the payment of interest. Such coupons to be also hereto annexed and to be evidence of such extension.

"This is one of a series of (3) promissory notes of even date herewith, executed by and payable to the same parties, for an actual loan of money amounting in the aggregate to the sum of $4,000, and secured by a deed of trust of the same date upon real estate situate in the county of Knox, and State of Missouri, under the provisions of which deed should the maker of the

said promissory notes fail to pay the legal holder or holders thereof any of the principal sums payable thereby, or any installment of interest on any of said principal sums at the respective times when the said principal sums or any of them or any of the said installments of interest thereon, shall become due and payable by the tenor and effect of the said promissory notes and the said original interest coupons respectively, or as the said principal or any part thereof, or interest thereon may become payable by and during any such extension, the trustees named in such deed, or either of them or the survivor of them, or the executors or administrators of such survivor, may in that case at once proceed to sell the trust property at public sale for cash on the publication of a notice of the sale at least thirty days prior thereto, and from the proceeds of the sale pay all of the said principal sums, payable by the said three promissory notes with the interest thereon computed to the day of sale, so far as the same may then remain unpaid, together with the costs and expenses of the said trust and sale.

"JOSEPH LONG."

"COUPON.

"Loan No. 1065.   No. (1) coupon 9.  •

"Due L. and C. H. Bull or order on the 1st day of April, 1880, seventy-five dollars payable without grace at the banking house of L. and C. H. Bull in Quincy, Ills., with current rate of exchange on New York, being for the payment of interest due that day on my note to L. & C. H. Bull of even date herewith for the sum of fifteen hundred dollars payable five years after date.   If this coupon is not paid at maturity, then it is to bear interest at the rate of ten per cent per annum from date until paid.          "JOSEPH LONG.

"Quincy, Ills., Dec. 18th, 1876."

Long v. Long.

*O. D. Jones* for defendant-appellants.

(1) Defendant's motion to compel plaintiff to elect should have been sustained. At least two distinct causes of action are stated in the petition; one on the Bull claim that "arises in such cases by operation of law;" the other on deed, mortgagee against mortgagor, plain legal case to foreclose. The two deeds and debts are of different dates, for different amounts to different payees, claimed and held by plaintiff under different titles, and draw different rates of interest. *Riley v. McCord*, 24 Mo. 265; *Mason v. Barnard*, 36 Mo. 385; *Smith v. Finn*, 77 Mo. 499; *Humphreys v. Mill Co.*, 98 Mo. 542; R. S. 1889, sec. 1989; *Mitchner v. Holmes*, 117 Mo. 185; *Childs v. Railroad*, 117 Mo. 414. (2) A party can not sue on express contracts and recover on an implied assumpsit. *Christy v. Price*, 7 Mo. 430; *Davidson v. Biermann*, 27 Mo. App. 655; *Clark v. Kane*, 37 Mo. App. 259; *Mansur v. Botts*, 80 Mo. 651; *Moore v. Gause & Sons*, 113 Mo. 98. (3) Suit on the Bull claim is barred by the statute of limitation of five years. "Subrogation arises in such cases by operation of law." *Long v. Long*, 111 Mo. 12; 15 Am. and Eng. Ency. of Law, 864; *Bauer v. Gray*, 18 Mo. App. 164; Bishop on Contracts [1887 Ed.], 199, 203; *Grey v. Bonnet*, 3 Met. 522; Sheldon on Subrogation, sec. 4; *McDaniels v. Lee*, 37 Mo. 204; *Singleton v. Townsend*, 45 Mo. 379; *Hopewell v. Kerr*, 36 N. E. Rep. (Ind.) 48; *Roeder v. Keller*, 35 N. E. Rep. (Ind.) 1014; *Windom v. Howard*, 26 S. W. Rep. 175; *Plett v. Wilson*, 31 N. E. Rep. 336; *McNighney v. Frazee*, 27 N. E. Rep. (Ind.) 431; *Ingram v. Same*, 16 N. E. Rep. (Ill.) 868; *Romey v. Stroughten*, 13 N. E. Rep. (Ill.) 833; *Adair v. Adair*, 78 Mo. 630-633. (4) Defendant objects to the written assignment to the Bulls on the back of the notes, on grounds no assignee or

grantee is shown. R. S. 1889, secs. 4832, 4847, 2532, 4876, 4877; *Railroad v. Kimmel*, 58 Mo. 83; *Smith v. Beattie*, 57 Mo. 281; *Douthitt v. Stinson*, 63 Mo. 268. (5) The court erred in excluding the testimony of O. D. Jones to the trial of the motion in the case, in the Marion county circuit court. It simply shows the understanding of the parties as to the nature of the trial; if the motion was sustained, it was final that the case was argued, and the terms on which submitted. This evidence is competent to go with and explain the record. In some cases it is even permissible for the parties to show by oral evidence what facts were in issue and were tried. (6) No step to legally assert the Howerton claim in a manner the court could recognize and enforce was ever taken until filing the amended petition June 15, 1893. His "attitude" to defendant debarred him from prosecuting the claim. 12 Am. and Eng. Ency. of Law, p. 559; *Thayer v. Swift*, Walk. Ch. (Mich.) 384; *Jones v. Williams*, 5 Coldw. (Tenn.) 371; *Ayers v. Morehead*, 77 Va. 586; *Caloway v. Alexander*, 8 Leight. (Va.) 114; *Ives v. Sargent*, 119 U. S. 652; *Haxham v. Lewleyn*, 21 W. R. 766; *Biert v. Leaton*, 101 Ill. 242; *Burgess v. Railroad*, 99 Mo. 496–508; *Murphy v. De France*, 105 Mo. 53–69; *Ferguson v. Soden*, 111 Mo. 208–215; *Bett v. Brown*, 101 Ill. 243. (7) The amended petition, filed June 15, 1893, changes the cause of action before stated, and lets in the defense of the statute of limitation of ten years. *Scoville v. Glassner*, 79 Mo. 449; *Parker v. Rodes*, 79 Mo. 88; *Lumpkin v. Collier*, 69 Mo. 170; *Blake v. Minkner*, 36 N. E. Rep. 246; *Railroad v. Jones*, 37 N. E. Rep. 247; *Sweet v. Jeffries*, 48 Mo. 279. (8) The bull claim is barred by limitation of five years and of ten years. It is *res judicata* under the Marion county judgment, or it is barred by the failure to reinstate the cause in one year. It is stale, barred by laches, and inequitable. *Huthsing*

*v. Maus*, 36 Mo. 109; R. S. 1879, sec. 3556; R. S. 1889, sec. 2084; *Reed v. Reed*, 39 Mo. App. 473; *Kennedy v. Ballard*, 39 Mo. App. 340; *Sachase v. Clingingsmith*, 97 Mo. 406. (9) Since plaintiff elected to amend he is now in the place of any other litigant who has rescinded sale or transaction and subject to the rules of law applicable in such cases. The general rule in such cases is, he must restore defendant to his *statu quo*. 21 Am. and Eng. Ency. of Law, pp. 77–84–89. Since he is still mortgagee in Howerton deed we do not claim he must restore possession; but all else that came to him by reason of the sale he must. For restoration is an "absolute condition precedent to the exercise of the right to rescind, whether done with or without the intervention of the court." *Melton v. Smith*, 65 Mo. 315–324; *Jarrett v. Morton*, 44 Mo. 275; *Estes v. Reynolds*, 75 Mo. 563–565. (10) Three defenses are pleaded to the recovery of interest: *First*. That the plaintiff can not have any interest on the money bid at the Howerton trustee's sale while he claimed and held under it; *second*, that the contract for interest in the Bull deeds, notes and coupons is usurious, and as to interest on it, if any, plaintiff paid, he was volunteer and can not recover for it; *third*, that note in the Howerton debt is barred by statute, and the debt as recited in the deed only draws six per cent. 3 Am. and Eng. Ency. of Law, pp. 542–544, 549, and cases cited; *Stix v. Mathews*, 63 Mo. 371; *Golson v. Ebert*, 52 Mo. 260; *Roach v. Type Foundry*, 21 Mo. App. 118; *Stix v. Mathews*, 75 Mo. 96; *Johnston v. Gawtry*, 83 Mo. 339.

*Blair & Marchand* and *W. C. Hollister* for plaintiff-appellants.

(1) The defendant Jo. Long could not object to others being made parties defendants. *Alnutt v. Leper*,

48 Mo. 319-322. (2) Davis, Jones and others are necessary parties. R. S. 1889, secs. 1992, 1993, p. 527; sec. 2099, p. 552; secs. 7084, 7085, p. 1653; 2 Story, Eq. Jur. [13 Ed.], sec. 1526, p. 853; *Burke v. Flournoy, etc.*, 4 Mo. 116, 117; *Potter v. Stevens*, 40 Mo. 229, 233, 234; *Olmstead v. Tarsney*, 69 Mo. 400; *Bank v. N. Mo. Coal Co.*, 86 Mo. 125. (3) The filing of the second amended petition was not the beginning of the suit. *Mann v. Schroer*, 50 Mo. 307. (4) The most important objection to the decree is in the calculation of interest by the court. *Noell v. Gaines*, 68 Mo. 649; *Meier v. Meier*, 105 Mo. 429. (5) The lower court held the coupon notes and coupons usurious upon their face. But as the contract was made and consummated in Missouri, and as defendant made no tender of legal interest on the notes and coupons as required by former decisions of this court (111 Mo. 214; 53 Mo. 309; 44 Mo. 350; 44 Mo. 374; 7 Wait's Ac. Def. 633), and the court allowed plaintiff six per cent simple interest from April 1, 1877, to the date of their maturity, and from that date to judgment ten per cent simple interest, we hold the notes and coupons are not usurious upon their face, because both on their face are made to bear ten per cent per annum. 1 Dan'l on Neg. Inst., sec. 924; 2 Dan'l on Neg. Inst., secs. 1487, 1493, 1495, 1500, 1501, 1506a, 1513, 1516; 3 Pars. Con. [7 Ed.], p. 123; 3 Pars. Con. [7 Ed.] 140, 141; *Aurora City v. West*, 7 Wall. 82, 105.

BARCLAY, C. J.—These appeals form the latest chapter (to date) of the litigation between the brothers Long. It will not be necessary to go over the entire history of their dispute. Its principal features are described in former opinions. *Long v. Long* (1883) 79 Mo. 644; *Long v. Long* (1888) 96 Mo. 180 (8 S. W. Rep. 766); *Long v. Long* (1892) 111 Mo. 12 (19 S. W.

Rep. 537); *Long v. Long* (1894) 28 S. W. Rep. 69. The case in hand came to the court *in banc* from the first division by transfer after the last mentioned opinion had been rendered, and a motion for rehearing had been made. The effect of the transfer to the court *in banc* was to grant the rehearing, which was duly had before the entire court. The case is the same that was before the first division of the court in 1892, reported in the 111th Missouri Report. The cause was then remanded with these directions: "On the return of this cause to the lower court, the plaintiff will be allowed to proceed with his foreclosure, provided he include within its scope the whole indebtedness due from the defendant, and shall open the sale heretofore made by him under the second or 'Howerton' deed of trust, and shall be treated in all respects as a mortgagee in possession."

After the decision quoted, the plaintiff in the circuit court (June 16, 1893) filed his second amended petition, the general outlines of which are as follows: David Long is plaintiff. The defendants are Joseph Long, Charles H. Bull, William B. Bull, Mary J. Rinehart, Frank E. Rinehart, Fanny B. McCulley, Thomas M. McCulley, her husband, Robert P. Johnson, Orville D. Jones, Samuel B. Davis and Henry T. Howerton. None of these defendants except Joseph Long was a party to the cause on the first appeal in this case. Plaintiff gives at length in the petition an account of the original loan secured by the deed of trust (known to all the parties as the "Bull mortgage"). He then mentions the sale of the land under that deed at the instance of the insurance company (as holder of the secured notes), the purchase of the land by Mr. Goodman, the holding of that sale invalid by the Supreme Court (*Long v. Long*, 79 Mo. 644), and the purchase by plaintiff thereafter of the Goodman title and of the

original unpaid notes of that loan.     Then plaintiff
adds his version of the transaction in which the · later
incumbrance (known by the parties as the "Howerton
mortgage") was given.     Plaintiff asserts that it is a
subsisting obligation, and alleges that he (plaintiff) has
been in possession of the land since July 1, 1885, as the
holder of the notes secured by that mortgage.  Then fol-
lows a statement of several later incumbrances (placed
by Joseph Long on some of the lands described in the
deeds which David claims under).     These incum-
brances are mentioned as a basis for the prayer that
those incumbrances be decreed to be subsequent liens
to the mortgages which plaintiff aims to enforce and
foreclose.     To obtain such a decree the above men-
tioned parties, the Rineharts, McCulley, Johnson,
Jones and Davis are named by plaintiff as parties de-
fendant.     The Messrs. Bull and Howerton, who were
trustees in the deeds of trust that form the basis of
plaintiff's suit, are joined as defendants on that ac-
count.

The prayer of the petition is that plaintiff "be sub-
rogated to all the rights of the said Phoenix Mutual Life
Insurance Company in and to the said principal and
coupon interest notes; and in and to the principal sum
and interest thereof and thereon, and to all the rights
of the . . . . . . . insurance company in and to the deed
of trust securing the same, and in and to the land
therein described as aforesaid; and that he may have
judgment for the balance of said principal and coupon
interest notes, remaining unpaid with interest thereon,
with compound" (interest) "per annum, and for all the
improvements made by plaintiff on the real estate de-
scribed in the said deed of trust from defendant Joe
Long to the said defendants, Charles H. and William B.
Bull, and from said defendant, Joe Long, to said
defendant Howerton, with interest thereon; and also for

the taxes paid by plaintiff, or caused to be paid, by him upon said real estate, with interest thereon from payment, after allowing the defendant, Joe Long, credit for the rents thereof as aforesaid; and for judgment for the amount of the note and the interest due thereon at compound" (interest) "per annum, as aforesaid made and delivered by defendant, Joe Long, to said plaintiff, and to secure the payment of which defendant, Joe Long, made and delivered the deed of trust to the said Henry T. Howerton as aforesaid; and that the equity of redemption and interests of the defendant, Joe Long, Mary J. Rinehart, Frank E. Rinehart, Fannie B. McCulley, and Orville D. Jones, in and to the real estate, as aforesaid described in said deed of trust from said defendant, Joe Long, to said defendants, Charles H. and William B. Bull, and from said defendant, Joe Long, to the said defendant Henry T. Howerton, be forever foreclosed, and that the rights of all the defendants herein be ascertained and declared; and if the court shall find anything due upon the note, as aforesaid made by the defendant, Joe Long, to the said Stephen C. Rinehart, deceased, and upon the two notes as aforesaid made by defendant, Joe Long, to defendant, Orville D. Jones, then that the court shall declare and adjudge that the same be declared subsequent liens upon the real estate or any part thereof, as aforesaid described in the said Bull deed of trust, and in the said Howerton deed of trust, and that the payments thereof be postponed until the said principal notes and coupon interest notes, as aforesaid made and delivered by defendant, Joe Long, to the said L. & C. H. Bull, and the note, as aforesaid made and delivered by defendant, Joe Long, to plaintiff, be fully paid off and satisfied; and that the said real estate, as aforesaid described in the said two deeds of trust from defendant, Joe Long, to the defendant, Charles

H. and William B. Bull, and from defendant, Joe Long, to defendant, Henry T. Howerton, be sold to pay off and satisfy the judgment and decree which shall be rendered herein in favor of plaintiff, and if there shall be any surplus arising from the sale of said real estate over and above the payment of the said judgment, which shall or may be rendered in favor of plaintiff, together with the costs of this suit, then that the same be paid over to the parties interested therein, according to the findings and decree of this court, and for general relief."

The answer of the leading defendant, Joseph Long, contains a number of special defenses which will be mentioned along with the discussion of them. Several of the defendants, viz., Messrs. Bull, Davis and Jones, answered to the effect that they are not necessary or proper parties to the litigation. The heirs of Rinehart and Mr. Howerton failed to answer, and default was taken against them. The plaintiff by reply met the answer, so that issues were raised for trial. The noteworthy features of the answers and reply will appear in the course of the opinion. Certain motions were made before trial which it will not be necessary to specially notice, in view of the rulings hereinafter announced. The cause came to trial, and defendant demanded a jury to try the issue of fact as to the Howerton deed of trust; but the demand was overruled. The leading facts were not in serious controversy at the trial, though there are some differences on minor issues.

The following dates of the principal events were shown, and it will be well to note them particularly:

1875, Dec. 18.   Date of "*Bull*" deed of trust, securing loan of $4,000 and interest.

1877, July 5.   Date of "*Howerton*" deed of trust, securing $2,033 and interest.

1877, Oct. 1.   Default on interest of the Bull loan.

1877, Nov. 27. Sale under Bull deed of trust—purchased by Goodman.

1877, Nov. 30. Deed of quitclaim to plaintiff of Goodman's title.

1878, April 2. First ejectment action begun, *Long v. Long*, 79 Mo. 644.

1879, April 12. Sale under Howerton deed of trust. Plaintiff became purchaser.

1881, March 20. Plaintiff went into possession under circuit judgment in the first ejectment case.

1884, April 18. Plaintiff surrendered possession under order of restitution, 79 Mo. 644.

1884, May 8. Second ejectment begun, *Long v. Long*, 96 Mo. 180, under the Howerton sale to plaintiff.

1884, May 15. Suit in equity begun—*Long v. Long*, afterward ended by dismissal "without prejudice," in Marion county circuit court, June 15, 1886.

1885, July 1. Plaintiff took possession under circuit judgment in second ejectment case, afterward affirmed by Supreme Court, 96 Mo. 180.

1887, Sept. 24. Present suit begun.

1893, June 16. Amended petition filed, after reversal, 111 Mo. 12.

Bearing these dates in mind, the substance of the controversy may be readily described. The lesser phases of it can then be presented so as to prevent confusion of statement.

Plaintiff's case, as he makes it, is one of a mortgagee in possession seeking to foreclose the two deeds of trust in the nature of mortgages above mentioned. His possession is derived from a judgment in ejectment, based on a purchase of the land by him at trustee's sale under the second (Howerton) incumbrance. He has acquired the title of the purchaser under the "*Bull*" (or first) deed of trust, as also the notes secured by that instrument. In accordance with the option given

him by the opinion of the first division on the former appeal (111 Mo. 12) the plaintiff brought both demands secured by the deeds of trust into this foreclosure suit, and asked an adjustment of his brother Joseph's debt, as described in those deeds.    Upon an accounting the court found in plaintiff's favor for the sum of $11,663.45, and rendered an elaborate decree of foreclosure, and for payment of that sum by defendant, Joseph.    It was adjudged that Joseph Long's equity of redemption be foreclosed in event the debt so ascertained should not be paid within six months.    The facts on which the decree was founded were recited, and the parties (who were joined as defendants, because lienholders, after the aforesaid deeds of trust) were adjudged to hold their titles in subordination to those deeds, and to the said debts secured thereby.    Both the Longs, plaintiff and defendant, appealed after the necessary preliminaries.

The defenses to the plaintiff's case may be conveniently treated separately, and the facts bearing upon each will be stated along with the discussion thereof.

1.    But before we take up those defenses, it may be well to consider the exact status of plaintiff in the present action.    He wants to be subrogated to the standing of the original parties of the third part in the Bull deed of trust, to enforce the debt which it secured, and to foreclose Joseph Long's equity of redemption under that deed.    The plaintiff was already in possession under the second (Howerton) deed of trust.    Division One of the Supreme Court (111 Mo. 12) held that plaintiff was not entitled to be subrogated to the place of the original beneficiary in the Bull deed of trust without also letting in Joseph Long to redeem under the second (Howerton) incumbrance.    The plaintiff conformed to that ruling in the trial court and amended his petition accordingly.    Neither the plaintiff nor any of

the defendants, at any time in any way in the circuit court proceedings, claimed or asserted that Joseph Long had lost his right of redemption by reason of plaintiff's purchase under the second (Howerton) deed of trust. Plaintiff has throughout the case insisted that the equity of redemption of Joseph Long under the first incumbrance was alive, and hence has asked to have it foreclosed. Since the former appeal in this suit he has likewise made the same claim as to the Howerton deed. Defendant Long has, it is true, argued that plaintiff had an adequate remedy at law as owner of the Bull loan notes and incumbrances, and hence that plaintiff had no right in equity to a decree for subrogation to the place of the creditor in the Bull deed. But at no time has Joseph Long disclaimed his right to the equity of redemption, conceded by the plaintiff's pleadings as to both these incumbrances. On the contrary, the whole theory of Joseph Long's defense is to prevent the enforcement by David of the Bull debt, and to cut down the amount of David's claim as to both incumbrances.

The creditor under the first deed of trust had the undoubted right to assert against the debtor (and against the land) the claim which that deed secured. That right has passed to the plaintiff (as will appear further on) and if plaintiff demands its recognition and enforcement by the court, it is not for the latter to refuse it because plaintiff might have a standing to ask something different. If plaintiff had the choice of either resting upon his legal title or of yielding to defendant an equity of redemption as to both incumbrances, in order to obtain a decree for the unpaid Bull debt, we do not see how the courts could properly deprive plaintiff of his right to elect which course he would choose. A mortgagee in possession may undoubtedly bring a bill to foreclose, and certainly no

court of equity should compel a mortgagee to waive any of the concurrent remedies to which he may be entitled. *Thornton v. Pigg* (1857) 24 Mo. 249.

It should furthermore be remembered that under the ruling in *Schanewerk v. Hoberecht* (1893) 117 Mo. 22 (22 S. W. Rep. 949), plaintiff acquired the legal title to the land by reason of his purchase from Goodman, even though the sale to Goodman under the Bull incumbrance may have been so irregular as not to extinguish the mortgagor's equity of redemption. As the holder of the legal title, plaintiff could not proceed in equity to enforce the debt secured by the Bull deed of trust, and at the same time claim that the entire equity of redemption of Joseph was extinguished by plaintiff's purchase under the Howerton deed. And so Division One declared in the learned opinion of Judge SHERWOOD when this cause was here before (111 Mo. 12). We certainly should follow that ruling. It is clearly just.

If there is any force or value in the rule of appellate practice (so often declared and enforced in this court) that parties should be held bound on appeal by the positions they have taken in the trial court, these parties should now be dealt with according to the case they have made and tried on the circuit. *Walsh v. Warren* (1853) 18 Mo. 157; *Bensieck v. Cook* (1892) 110 Mo. 173 (19 S. W. Rep. 642); *Queen City, etc., Co. v. Crawford* (1895) 127 Mo. 356 (30 S. W. Rep. 163); *Evans v. Kunze* (1895) 128 Mo. 670 (31 S. W. Rep. 123; *Meyer v. Chair Co.* (1895) 130 Mo. 188 (32 S. W. Rep. 300).

In my opinion it would be manifestly inequitable for the Supreme Court to adjudge, on this record, that Joseph's equity of redemption was extinguished by the Howerton sale, contrary to Joseph's protest, as well as contrary to the claim of the plaintiff in all his plead-

ings in the case. The court certainly would not now allow the plaintiff to take that position for himself. And surely the court ought not, of its own motion, to push him into such a position. No! the case should, in my opinion, be treated in accordance with the positions taken, and the demands made, by the parties in the circuit court, unless some rule of public policy (enforcible by the court without regard to their wish) prevents such treatment; and no such rule that we know of is applicable to the facts of this litigation. We proceed therefore to consider the defenses presented to the trial court.

2. It is contended for defendant that the suit is barred by limitation as to any claim based on the Bull deed of trust. Even were the debt barred, the deed of trust might still be available to the creditor by a foreclosure suit, as has been held in several judgments of this court. *Lewis v. Schwenn* (1887) 93 Mo. 26 (2 S. W. Rep. 391); *Combs v. Goldsworthy* (1892) 109 Mo. 151 (18 S. W. Rep. 1130); *Chouteau v. Riddle* (1892) 110 Mo. 366 (19 S. W. Rep. 814). But this suit was begun within ten years after the first default in the payment of interest, which was in October, 1877, so that the statute of limitation does not bar this suit to enforce the debt secured by that deed, unless the amendment of the petition into its present form (in 1893) permits that statute to apply. But the amendment did not substantially change the plaintiff's demand against Joseph Long as to the Bull debt. It merely brought the second deed of trust into view for a foreclosure, and thereby conceded Joseph Long's right to redeem as to both claims of plaintiff, in accordance with the ruling of the Supreme Court requiring that course to be taken. The amendment did not make the statute of limitations available in this case (even if it would have been available as to a new suit then begun). *Lilly v.*

*Tobbein* (1891) 103 Mo. 477 (15 S. W. Rep. 618).

It is not claimed that the debt secured by the Howerton incumbrance is barred by limitation against plaintiff as mortgagee in possession.   The answer limits the pleas of limitation to the demands founded on the first incumbrance.

3.   As plaintiff is the holder of the original notes (indorsed in blank by the payees) mentioned in the Bull deed of trust, and is the purchaser of such legal title as Goodman acquired at the first trustees' sale, it is wholly immaterial whether or not the insurance company (which is said to have been the holder of the notes at the time of that sale) was an incorporated concern, or merely a business firm dealing by that name. The indorsement in blank by the payees (the Bulls) and the possession of the notes by plaintiff being shown, made a *prima facie* case of plaintiff's title to the notes, which nothing presented adversely rebutted.

The bringing on of the sale, however, to meet the requirements of the first mortgage, must be held an election to bring the notes secured thereby to maturity for the purposes of a sale at that time.   The creditor had the privilege of exercising such election according to the terms of the notes themselves, as well as of the first deed of trust.   The creditor by that election made the principal notes due, for the purposes of payment by the proceeds of the sale.   The proceeds were sufficient in amount to discharge the debt.   But the sale was held ineffective to pass the debtor's title or to cut out the equity of redemption (*Long v. Long* (1883) 79 Mo. 644); and plaintiff (having meanwhile acquired the rights of the secured creditor) is entitled to all the remedies available to enforce those rights.   He had an equitable interest in the estate by reason of his position as beneficiary in the second (Howerton) deed of trust,

and hence was no mere volunteer in taking up the Bull notes and acquiring the legal title as security for them.

4. As plaintiff established title to the original principal notes, the right to enforce the security which the Bull deed of trust afforded for their payment belonged to plaintiff in the circumstances. The fact that he asked to be subrogated to the position of the original creditor would not shorten the statutory limitation otherwise applicable to the enforcement of that deed of trust. The request for subrogation is merely incidental to the larger objects sought by plaintiff, and stated in his petition. So we hold that the limitation of five years has no application to plaintiff's case, and still less has the limitation in one year.

5. The limitation of one year is pleaded with reference to the earlier suit which ended in Marion county. It is argued by defendant that as that earlier suit was of the same general nature as the pending one, a renewal of it on the same grounds should have been begun, under section 6784 (R. S. 1889) within one year after the former ended. But the short term of limitation, prescribed by the last cited section, obviously was not intended to curtail, but to extend, the time allowed by other sections of the limitation law for the bringing of suits. The fact that a suit has been brought, and has been terminated as described in section 6784, within the period limited for suits of its class, does not prevent the institution of another suit within the period allowed to an original suit of the same class. The privilege conferred by section 6784 of bringing another suit within one year is available when the time of limitation (otherwise prescribed for suits of the kind) has expired.

6. It may be convenient just now to dispose of another point referring to the suit which terminated in Marion county. Defendant insists that the judg-

ment there was a final adjudication of the subject now
in litigation.    Conceding that the former suit was for
the same objects as this one, the result there (upon a
motion for judgment on the pleadings) was "that plain-
tiff's bill be dismissed without prejudice, and that de-
fendant have and recover of plaintiff, David Long, his
costs," etc.    If that judgment was erroneous, in the
then state of the record (which, however, we do not
decide) defendant's remedy was by a resort to some
process to review it.    The judgment was not void.    It
is not subject to a successful attack collaterally upon
a mere showing that it should have omitted the words
"without prejudice."    We must deal now with the
judgment just as it stands.    In its present form it is
not a conclusive adjudication of the matters then in
controversy, precluding a later suit for the same cause
of action.

7.    Nor did the trial court err in excluding oral
testimony offered by defendant with a view to give a
broader effect to the Marion county judgment than its
terms reach.    The record could not be varied in a col-
lateral suit by testimony of that sort.    There are, no
doubt, occasions when extrinsic testimony is available
to elucidate some obscurity in the meaning of a judg-
ment; but to contradict such a judgment is quite a
different matter, and that would be the effect of the
testimony tendered on that subject in the case at bar.
It was not admissible in the circumstances shown by
this record.

8.    The demand for a jury was not well founded
under the rulings of the Supreme Court for many
years.    The case is clearly one of equitable cognizance
and was properly triable by the court under our law on
the subject.    R. S. 1889, sec. 2132; *Brim v. Fleming*
(1896) 135 Mo. 597 (37 S. W. Rep. 501).

9. The defendant further argues that the trial court was in error in permitting plaintiff to recover the interest adjudged to him by the decree. On the other hand, the leading cross-error assigned by plaintiff on his appeal is that there was error against him is not allowing more interest on the Bull debt in the final result. The passage in the finding which indicates in a general way the principles applied by the learned trial judge to this branch of the controversy is as follows: "And the court further finds that plaintiff, by virtue of his said rights to subrogation as aforesaid, is entitled to recover and only recover the sums specified in said principal promissory notes, and six per cent thereon per annum from October 1, 1877, up to the date of their respective maturity, and interest from the maturity of each of said notes at the rate of ten per cent per annum up to the date of this decree, no interest being compounded." The principal notes referred to were three, of which two were for $1,500 each (payable at five and six years respectively) and the third was for $1,000, payable four years from the date which all of them bore, December 18, 1875. The notes promised payment of interest before maturity, and also "after due until the said principal sum is fully paid," at "the rate of ten per cent per annum;" and they recited that "interest coupons for the payment of said interest" were annexed to the notes. These coupons matured at intervals of six months, beginning April 1, 1876, excepting the last, which was payable at the maturity of the entire loan. Each interest coupon also contained a promise to pay ten per cent interest on the amount of the coupon, if not paid at maturity. The defendant insists that the aforesaid notes and coupons exhibit an agreement for usurious interest, and that plaintiff can not enforce that part of the agreement. Defendant put in evidence certain statutes

Long v. Long.

of Illinois, supposed to have some bearing on the rights of the parties.   They are found in the revised statutes (1877) of that State (chapter 74, sections 4 to 9 inclusive) but were in force from a much earlier date, long before the facts now in litigation.   The original transaction (out of which the Bull loan grew) took place at Edina, Missouri.   There the notes, coupons and mortgage were executed.   The payees of the notes resided at Quincy, Illinois.   The notes and coupons were expressed as dated in the latter city and were made payable there, at the banking house of the payees, L. & C. H. Bull.   The defendant insists that the agreement as to interest is usurious according to the law of Illinois, the place where the notes and coupons were payable. He proved that law as a fact at the trial.

There is nothing in the case to suggest that there was any intent to evade any law of Missouri in so drawing the notes.   On the contrary, the payees had a banking house at Quincy, and the fixing of the place of payment there seems to have been a very natural and reasonable arrangement.   If it be conceded that the law of Illinois is applicable to determine the recoverable amount of interest, it is clear that the notes and interest coupons are entirely valid, according to the most recent expressions of opinion by the Supreme Court of that State.  *Benneson v. Savage*, 130 Ill. 352; *Drury v. Wolfe* (1890) 134 Ill. 294; *Bowman v. Neely*, (1894) 151 Ill. 37.

We are further of the opinion that if the interest to be paid for the loan was valid and lawful according to the law of the place where the interest was, in good faith, agreed to be paid, that agreement as to interest should be held good in the courts of this State, in the circumstances shown in this case.

The law of Missouri (where the notes were signed) does not declare such instruments wholly invalid or

void because of stipulations to pay greater interest than the statute of our State permits. Our home law in case of usury only purports to affect the right to recover interest. So we are not required to determine the question that would arise as to the validity of these notes had our law declared them wholly void in event of an infraction of the statute as to usury. The agreement as to interest we regard as valid if sanctioned by the law of the place where the parties to the paper have agreed that the interest shall be paid. *Miller v. Tiffany* (1863) 1 Wall. 298; 27 Am. and Eng. Ency. of Law, 971.

10. But in relation to the subject of interest another matter should be mentioned. The holder of the notes brought on a sale of the land to meet the demands of the "Bull" deed of trust in November, 1877. In so doing he elected to treat all the notes and coupons as due. In point of fact the land brought at the sale the full amount then due on these evidences of indebtedness. The holder had the right by the terms of the deed of trust to take that course; but that deed gave specific directions touching the application of the proceeds in that event. After the payment of expenses and certain charges (such as taxes, liens, and insurance) the deed of trust declares that from the proceeds of sale there shall be paid—"*Third*, to the party of the third part, or to the legal holder or holders of said notes, the principal sums of money thereby payable, with the interest thereon computed to the day of sale, so far as the said principal and interest remain unpaid," etc. From this provision it is evident that where a sale of the land occurs, so as to pass a title under the deed of trust, the beneficiary (who brought on the sale) can not equitably claim any interest on interest coupons beyond the date of the sale, even where the latter is imperfect, and therefore effects no extinguishment of

the debtor's equity to redeem. By the terms of the mortgage, as well as of the notes, however, the interest payable after, as well as before, maturity of the notes, is ten per cent per annum; and therefore the interest payable to plaintiff, who has acquired said notes, should be decreed at that rate (without compounding) from the date of the sale in November, 1877.

11. With the above modification we regard the judgment of the circuit court as correct on the subject of interest. But from what has been said, it follows that we must reverse the judgment that said modification as to interest may be made, and the account concluded to this time. The cause is therefore remanded with directions to bring the account down to the date of final hearing in the circuit court in accordance with the equitable rules for accounting with a mortgagee in possession, and in harmony with the views above declared, and then to enter a final decree of foreclosure, without, however, retrying the case further than to finally state the account of rents and profits, interest, etc., to the date of the decree. The costs of this appeal should be taxed equally against the two brothers, Long. GANTT, MACFARLANE, SHERWOOD, BURGESS, ROBINSON and BRACE, JJ., concur.